UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANTHONY STOGNER                                         CIVIL ACTION

VERSUS                                                  NO. 13-5092-DEK

TANGIPAHOA PARISH
SHERIFF'S OFFICE, ET AL.

## ORDER AND REASONS

Plaintiff, Anthony Stogner, filed this federal civil rights action pursuant to 42 U.S.C. § 1983. He sued the Tangipahoa Parish Sheriff's Office, Warden Joyce Jackson, Sheriff Daniel Edwards, Malinda Balado, Debralee Populis, and Sergeant Dubroc. In this lawsuit, plaintiff claimed that he was denied adequate medical care while incarcerated at the Tangipahoa Parish Jail. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

### I. Tangipahoa Parish Sheriff's Office

As noted, plaintiff sued the Tangipahoa Parish Sheriff's Office. However, it is clear that "a sheriff's office is not a legal entity capable of being sued...." Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 283 (5th Cir. 2002); accord Davis v. Lafourche Parish Sheriff's Office, Civ. Action No. 12-1859, 2012 WL 5866201, at *2, adopted, 2012 WL 5866495 (E.D. La. Nov. 19, 2012); Campbell v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-3143, 2009 WL 1107251, at *1 (E.D. La. Apr. 23, 2009); Wetzel v. St. Tammany Parish Jail, 610 F. Supp. 2d 545, 548 (E.D. La. 2009); Causey v. Parish of Tangipahoa, 167 F. Supp. 2d 898, 904 (E.D. La. 2001); Ruggiero v. Litchfield, 700 F. Supp. 863, 865 (M.D. La. 1988). Therefore,

---

[1] Rec. Doc. 21.

pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the claim against the Tangipahoa Parish Sheriff's Office will be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Remaining Defendants

The remaining defendants have filed a motion for summary judgment.[2] Plaintiff was ordered to respond to that motion on or before August 20, 2014.[3] No response was filed. For the following reasons, the unopposed motion will be granted.

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S.

---

[2] Rec. Doc. 32.

[3] Rec. Doc. 34.

317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

As noted, plaintiff claims that he was denied adequate medical care while incarcerated at the Tangipahoa Parish Jail. Specifically, he makes the following allegations: On December 7, 2012, plaintiff was arrested and taken to the jail. Upon his arrest, he provided officials with a list of his medical conditions and medications. However, he was given no medications for the first four days of his incarceration, and, even when he subsequently began receiving medications, he was given "incorrect substitutes and/or incorrect dosages." Later that month, he suffered a stroke,[4] and the first responders and the facility nurses recommended that he be sent to hospital immediately. As defendant Populis, a nurse practitioner at the jail, was completing the paperwork for him to be transported to the hospital, an unidentified guard told her, "Never mind, he's been released." Plaintiff was then returned to his cell, and his mouth later began going numb. Despite the

---

[4] In the complaint, plaintiff alleges that the purported stroke occurred on December 17, 2012; however, the medical records show that the incident actually occurred on December 20, 2012.

3

unidentified guard's comments, plaintiff was not in fact released. Rather, he remained in the jail for two additional months and experienced "sixteen similar but less intensive episodes." Then, in late February of 2012, he suffered a "prolonged attack of severe dizz[i]ness, blurred vision and weakness culminating in [him] passing out." At that point, he was taken to the hospital and diagnosed with acute kidney failure, which resulted in permanent damage to his kidneys.

It is clear that the federal constitutional rights of an incarcerated person, regardless of whether he is a pretrial detainee or a convicted prisoner, are violated only if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). Defendants do not argue that plaintiff's medical needs were not serious. They do argue, however, that plaintiff cannot prove that they acted with deliberate indifference.

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In support of their motion, the defendants submitted copies of plaintiff's medical records.[5] They argue that those records, which show that plaintiff was administered numerous medications and received repeated medical attention, rebut any contention that his medical needs were met with deliberate indifference. Those records show:

- On December 10, 2012, plaintiff was seen by defendant Populis. He was complaining that he was experiencing withdrawals from morphine and that he should be receiving medications for diabetes and chronic pain. He reported that he had been prescribed Glipizide (a diabetes medication), Metformin (another diabetes medication), Naproxen (a pain medication), and Simvastatin (a cholesterol-lowering drug), and Populis added prescriptions for aspirin, Buproprion (an anti-depressant), Catapres/Clonidine (a drug to treat high blood pressure), Lasix (a diuretic), and Vistaril (an anti-anxiety drug). Populis' "Plan Note" states: "monitor bp and meds on cart. added clonidine for withdrawals and vistaril x 14 days. dm [diabetic] diet and will check blood sugar daily offender verbalized understanding. note pain meds in his property locked up. family to bring other meds and list of meds."[6] The

---

[5] The copies of the medical records originally submitted by the defendants were uncertified; however, they subsequently substituted certified copies of the records. Rec. Docs. 36 and 37.

[6] Rec. Doc. 36-2, pp. 14-16.

5

medical records reflect that plaintiff did in fact begin receiving the aforementioned medications the following day.[7]

- On December 18, 2012, plaintiff was again seen by Populis, and she added a prescription for Lisinopril (another drug to treat high blood pressure).[8]

- On December 20, 2012, plaintiff was again seen by Populis. The record of that visit reflects: "Offender seen in medical this am c/o face and mouth went numb about 6:10 am. Deputy LaPuma states the offender was clammy and pale at 6:00 am. Now (8:30 am) he states he has a HA, finger tingling on right hand, blurry eyes and a little nauseated now." In the "Plan Note," Populis stated: "notified ms joyce of offender condition, she is awaiting official word for offender to be r/r. instructed offender to f/u with his pcp asap or go to the er if s/s continue offender verbalized understanding. offender appears in no distress at present. although remains to c/o facial numbness. note family brought in lisonopril 40 mg on Monday and was restarted although he was already place on clonidine for bp and withdrawals. will d/c clonidine 0.1mg bid now since restarted lisinopril and bp on the lower end and could be causing some of his clamminess. will check blood sugar now although offender has already eaten. currently blood sugar 145. if offender is not released will reassess and send to er."[9]

---

[7] Rec. Doc. 36-2, pp. 82-84.

[8] Rec. Doc. 36-2, p. 18.

[9] Rec. Doc. 36-2, pp. 19-21.

6

- Later that same day, plaintiff was again seen by Populis. She noted: "spoke with brandon pinion asst warden and he states that he is still waiting on approval to r/r offender. It is now 3 pm and offender is awake alert and oriented in holding cell and appears in no distress unlabored breath sounds and denies any compliant [sic]. will continue to monitor and f/u instructed Shelly lpn and brandon if any s/s changed send offender to er asap if offender doesnt get released. both verbalized understanding."[10]

- On December 27, 2012, plaintiff was again seen by Populis, and she added a prescription for Fluoxetine (another anti-depressant).[11]

- Notes from an examination on January 9, 2013 state: "Mr. Stogner has been complaining of chest pain and requested for his personal Nitro unfortunately we are unable to allow offender to keep this with him so we used our rub on Nitro. Nitro administered to chest at 3:35pm by Amber Dechara per Debbie Populis."[12]

- On January 10, 2013, plaintiff was again seen by Populis, and she added a prescription for Prazosin (another medication to treat high blood pressure).[13]

---

[10] Rec. Doc. 36-2, p. 22.

[11] Rec. Doc. 36-2, p. 24.

[12] Rec. Doc. 36-2, p. 44.

[13] Rec. Doc. 36-2, p. 45.

- On January 28, 2013, plaintiff submitted a "Request for Medical Treatment" asking for medicine to help him sleep. The following day Populis prescribed an increased dosage Vistaril.[14]

- Notes from an examination on February 18, 2013 state: "In clinic today c/o intermittent syncopal episodes, blurred vision, weakness. states: 'I think I had a stroke' In no apparent distress, moves all extremities bilaterally and symmetrical, PERRLA, neuro intact. BP 120/82, P68, R 20, O2 97%. denies any weakness or dizziness at this visit; but requesting follow up for cardiac and neuropathic pain to right leg; Right pedal pulses palpable and strong and capillary refill 2+ will seek transfer for more appropriate managed care."[15]

- On February 21, 2013, plaintiff was witnessed losing consciousness in his cell, and he was transported to the hospital.[16] At the hospital, he was found to have suffered "acute kidney injury"; after he was treated and stabilized, he was discharged back to the Tangipahoa Parish Jail.[17]

As a preliminary matter, the Court notes that plaintiff does not allege in the complaint, and the medical records do not reflect, that defendants Jackson, Edwards, Balado, or Dubroc were in any

---

[14] Rec. Doc. 36-2, pp. 52-53.

[15] Rec. Doc. 36-2, p. 65.

[16] Rec. Doc. 36-2, pp. 68-69.

[17] Rec. Doc. 36-2, pp. 72-75.

way personally involved with his medical care at the Tangipohoa Parish Jail.[18] That fact is, of course, problematic for plaintiff, because "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Nevertheless, even if the Court assumes that Jackson, Edwards, Balado, and/or Dubroc played some role in his medical care in addition to the role played by Populis, the Court nevertheless still finds that plaintiff has not shown that any genuine issue of material fact exists so as to defeat the motion for summary judgment. As noted, the defendants argue that the medical records rebut any allegation of deliberate indifference. See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."). The defendants are correct.

Although there admittedly was a four-day delay before prison officials began administering plaintiff's maintenance medications for his various ailments, there is no indication that any of the named defendants were even aware of plaintiff's need for those medications until the fourth day when he was examined by Populis and administration of the medications thereafter commenced. Moreover, even if plaintiff could show that any of the named defendants were aware that he needed, but was not in fact receiving, his medications prior to that fourth day, any claim based on the brief

---

[18] Plaintiff makes no allegations whatsoever against Jackson, Edwards, or Balado in the complaint. The only allegation against Dubroc is that he "came storming into the cell cursing me, saying I was nothing, a damned dirty DOC just trying to get out of jail." Rec. Doc. 1, p. 8. That allegation against Dubroc does not involve a denial of medical care. At best, it is an incident of verbal abuse; however, "claims of verbal abuse are not actionable under § 1983." Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); accord Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

delay in starting his medications still fails because a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in *substantial harm*." Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (emphasis added); accord Choyce v. Velez, 465 Fed. App'x 367, 368 (5th Cir. 2012) ("The mere delay of medical care can constitute an Eighth Amendment violation only if there has been deliberate indifference that results in substantial harm."). Plaintiff has produced no evidence showing that he suffered *any* harm, much less *substantial* harm, from the brief delay. Although he seems to the suggest that the delay caused his purported stroke on December 20, that conclusion is entirely speculative and wholly unsupported by any corroborative evidence.[19]

Turning now to that episode on December 20, the medical records support plaintiff's allegations that the episode occurred and that he was not transferred to the hospital based on a belief that he was about to be released from jail. Although he was not ultimately released on that day, there is no evidence that his imminent release was not in fact anticipated or that the decision to delay transportation to the hospital until that issue was resolved was in any way unreasonable, was made with an intent to harm plaintiff, or did in fact result in any harm. On the contrary, the records show that Populis continued to monitor the situation and, before the issue of his release was resolved, plaintiff's condition had stabilized, and he was no longer voicing any complaint. Further, Populis ordered that the monitoring continue and that plaintiff be sent to the emergency room as soon as possible if the symptoms returned.

---

[19] Further, to the extent that plaintiff makes the unsupported allegation that, even once the medications were started, he was given "incorrect substitutes and/or incorrect dosages," the medical records show otherwise.

Moreover, the medical records reflect that plaintiff continued to receive medications and medical attention throughout the period from December 20, 2012, until he was transported to the hospital on February 21, 2013.

Based on the foregoing, there is simply no evidence that any named defendant refused to treat plaintiff, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

Accordingly,

**IT IS ORDERED** plaintiff's claim against the Tangipahoa Parish Sheriff's Office is **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

**IT IS FURTHER ORDERED** that unopposed motion for summary judgment, Rec. Doc. 32, is hereby **GRANTED** and that plaintiff's claims against Warden Joyce Jackson, Sheriff Daniel Edwards, Malinda Balado, Debralee Populis, and Sergeant Dubroc are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this eighth day of September, 2014.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**